IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| B&W Lumber Company, Inc. | ) | Civil Action No. 3:09-00950-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER** |
| v. | ) | |
| | ) | |
| Norfolk Southern Corporation, Norfolk | ) | |
| Southern Railway Company, and The | ) | |
| South Carolina Department of | ) | |
| Transportation, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court for a preliminary determination of the existence of subject matter jurisdiction.[1] Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company (collectively "Railroad Defendants") removed the action to this court relying on the jurisdictional provisions of 28 U.S.C. § 1332 and the fact that they are both diverse from Plaintiff, B&W Lumber Company, Inc. ("B&W"). While the Railroad Defendants concede that Defendant South Carolina Department of Transportation ("SCDOT") is not diverse, they argue that SCDOT's citizenship may be ignored because it was fraudulently joined.

For the reasons set forth below, the court finds that the Railroad Defendants have not met their burden of proving that SCDOT was fraudulently joined. Accordingly, the court remands the

---

[1] Plaintiff originally filed this action in state court on March 13, 2009. The Railroad Defendants timely removed the case to federal court on April 10, 2009, alleging that SCDOT was fraudulently joined to defeat federal diversity jurisdiction. Dkt. No. 1. At the time of removal, a motion for injunctive relief was pending.

This court raised the issue of the propriety of subject matter jurisdiction *sua sponte* and directed the parties to brief the fraudulent joinder jurisdictional issue before addressing Plaintiff's motion for injunctive relief. *See* Dkt. No. 14. By agreement of the parties, the *status quo* has been preserved pending resolution of the jurisdictional question.

1

case to state court for lack of subject matter jurisdiction.

## BACKGROUND

B&W owns commercial property near railroad crossing 715882X ("Disputed Crossing"). That crossing provides access from Farrow Road in Richland County, South Carolina to B&W's property. Following a fatal accident and the commencement of related litigation ("Wrongful Death Action"), the Railroad Defendants sought to close the Disputed Crossing.[2]

B&W filed this action seeking to prohibit closure of the Disputed Crossing. Compl. ¶ 25. B&W also seeks a declaratory judgment that the Disputed Crossing is a public crossing or road in which B&W and the general public have an easement for the purpose of accessing B&W's property and adjoining land owners' property. Compl. ¶ 26. Alternatively, B&W seeks a declaration that B&W has an easement for the use of the Disputed Crossing. Compl. ¶ 27. Finally, B&W seeks damages for loss of profits and costs incurred to minimize damages which have been or may be caused by the closure or attempted closure of the Disputed Crossing. Compl. ¶ 28.

B&W's assertion that the Disputed Crossing is or should be deemed a public crossing or public way provides the basis for naming SCDOT as a Defendant. B&W asserts that a public crossing or public way cannot be closed without an order issued by SCDOT or another state agency and that none has been issued.

The Railroad Defendants, in contrast, assert that the Disputed Crossing is not a public

---

[2] The fatal accident occurred when decedent turned off of Farrow Road and attempted to cross the railroad track but was struck by a Norfolk Southern train. Decedent's personal representative sued a number of defendants including B&W, Norfolk Southern Railway Co., and SCDOT. The allegations relevant to B&W include that it contributed to the accident by placing a sign adjacent to the railroad crossing which obstructed either decedent's view of the oncoming train or the train conductor's view of decedent's truck.

crossing or road. They further maintain that B&W is estopped from asserting otherwise due to argument B&W has made in support of summary judgment in the Wrongful Death Action. Specifically, the Railroad Defendants refer to B&W's memorandum in that case which stated as follows:

> SCDOT recently provided its answers to written discovery. In its responses SCDOT verifies that it does not possess the right-of-way over the crossing or the roadway leading up to the crossing. In particular, SCDOT states: "The crossing is outside of [SCDOT's] right of way for Farrow Road, [and] does not cross a state maintained highway."

Dkt. No. 17-2 at 3 (B&W's memorandum in support of motion for summary judgment filed in state court in Wrongful Death Action on March 27, 2009). This recitation of SCDOT's discovery responses was offered in support of B&W's argument that its sign did not violate a state statute "which prohibits the placement of signs within a highway right of way." Dkt. No. 17-2 at 3. In addition, the Railroad Defendants note that B&W's attorney referred to the crossing as a private crossing at one point in his oral argument and stated "that [B&W's] sign was not within the [SCDOT] right of way for Farrow Road." Dkt. No. 17-3 at 4 (transcript of state court hearing on B&W's motion for summary judgment in Wrongful Death Action held on April 14, 2009).[3]

On June 6, 2009, the court received notice that the state court denied B&W's motion for summary judgment in the Wrongful Death Action on June 3, 2009. In denying B&W's motion, the court held that the state statute applies to all rights of way, not just highway rights of way, and that B&W had a duty to use care in erecting and maintaining a sign which it "voluntarily placed upon the [railroad] property." Dkt. No. 22. The state court did not address or resolve the question of whether the crossing is a "public" or "private" way.

## STANDARD

---

[3] B&W is represented by a different attorney in the Wrongful Death Action.

**Removal Standard**. The party removing an action bears the burden of demonstrating that jurisdiction properly rests with the court at the time the petition for removal is filed. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed. *Mulcahey*, 29 F.3d at 151. If federal jurisdiction is doubtful, remand is necessary. *Id.*

To be removable to federal court, a state action must be within the original jurisdiction of the district court. *See* 28 U.S.C. § 1441. District courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1).

**Fraudulent Joinder Standard**. When a plaintiff has fraudulently joined a non-diverse defendant, a district court may retain jurisdiction and disregard the non-diverse party. *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). To show fraudulent joinder of a party, a removing party "must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). "The party alleging fraudulent joinder bears a heavy burden -- it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley*, 187 F.3d at 424.

The Fourth Circuit has described this standard as "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* (citations omitted). All the plaintiff needs to show is that there is a "glimmer of hope," *Mayes*, 198 F.3d at 466, or a "slight possibility of a right to relief" in state court. *Hartley*, 187 F.3d at 426.

4

**DISCUSSION**

Defendants argue that SCDOT is a "sham defendant" that was fraudulently joined to defeat federal diversity jurisdiction. Defendants rely on a factual position taken by Plaintiff in the Wrongful Death Action (that the Disputed Crossing is private) and argue that Plaintiff is judicially estopped from taking a different factual position in this case. Plaintiff responds that this action is a separate legal inquiry from the Wrongful Death Action and that SCDOT is a proper party. In this case, Plaintiff is seeking (1) a declaratory judgment that the railroad crossing is a public way and (2) injunctive relief to stop its closure until an order has been issued by SCDOT or other state agency under S.C. Code Ann. § 58-15-1625. Plaintiff argues that although SCDOT maintains the Disputed Crossing is private, SCDOT should be involved in the closure of the Disputed Crossing if declaratory relief is granted.

During oral argument, Plaintiff acknowledged that SCDOT currently treats the Disputed Crossing as private.[4] Nonetheless, Plaintiff asserted that it had a legitimate basis for seeking a declaration that the Disputed Crossing is public or should be treated as such by SCDOT given the long-term public use of the crossing. Plaintiff also argued that it should be allowed discovery on SCDOT's procedures and prior practices as they relate to the conversion of a private crossing to a public crossing. Finally, Plaintiff argued that SCDOT may have authority to intervene in the closure of railroad crossings even if they are private.

**Judicial Estoppel.** In *Sedlack v. Braswell*, 134 F.3d 219, 224 (4th Cir. 1998), the Fourth Circuit explained the doctrine of judicial estoppel as follows:

'Judicial estoppel precludes a party from adopting a position that is inconsistent with a

---

[4] Defendants have provided maps of the Disputed Crossing and an affidavit by a SCDOT employee which purport to establish that the Disputed Crossing is not a public way. Plaintiff did not directly respond to these documents in its memorandum.

5

stance taken in prior litigation,' and is designed to prevent a party from 'playing fast and loose' with the courts and 'protect the essential integrity of the judicial process.' Although 'courts have had difficulty in formulating a specific test for determining when judicial estoppel should be applied,' at least three elements must always be satisfied. First, the party sought to be estopped must assert a position inconsistent with that taken in prior litigation and the position must be one of fact rather than law or legal theory. Second, the prior inconsistent position must have been accepted by the court. And third, the party sought to be estopped must intentionally have misled the court to gain unfair advantage.

In light of the second *Sedlack* factor, the Railroad Defendants' reliance on the doctrine of judicial estoppel is misplaced.[5] First, Defendant's articulation of Plaintiff's prior position (that the Disputed Crossing is private) has not been accepted by the state court because the state court did not determine ownership of the railroad crossing in resolving the motion for summary judgment.

Second, this court is not persuaded that Plaintiff's statements in the Wrongful Death Action are necessarily inconsistent with its position in this case. In the Wrongful Death Action, B&W's alleged liability is founded on B&W's placement of a sign near the Disputed Crossing. Plaintiff in that action maintains that the sign impaired visibility and violated a South Carolina statute which prohibits the placement of signs on highway rights of way. In seeking summary judgment in the Wrongful Death Action, B&W argued that the statute did not apply *because the sign was located on Norfolk Southern private property*, and not on a highway right of way. Dkt. No. 17-2 at 5. B&W cited SCDOT's answers to written discovery in support of this position. Those responses state that "the crossing is outside of SCDOT's right of way for Farrow Road and does not cross a state maintained highway." *Id.* at 3. B&W contended that its sign was more than 14 feet away from a highway right of way near a crossing that SCDOT did not maintain. *Id.* at 5.

---

[5] In oral argument, counsel for Railroad Defendants conceded that judicial estoppel is not a particularly strong argument in light of the state court's order in the Wrongful Death Action denying B&W's motion for summary judgment.

These arguments may suggest that the Disputed Crossing is "private" rather than a "public way" but are not express statements to that effect. However, in the hearing on Plaintiff's motion in state court, counsel for Plaintiff stated, "This case is a case that involved the collision of a train on the railroad tracks and the decedent's vehicle at a *private crossing* here right off of Farrow Road near my client's place of business, which is across the railroad tracks from the -- Farrow Road." Dkt. No. 17-3 at 4 (emphasis added). Later in the hearing, counsel stated, "It is undisputed, Your Honor, that this sign was not within the South Carolina Department of Transportation right of way for Farrow Road." *Id.*

In sum, there was only one express statement made by B&W's counsel that the crossing is a private crossing. That statement was made during oral argument and, arguably, went beyond the position taken in the written memorandum. The remaining statements, whether oral or written, may be consistent with the argument that the crossing was private, but are also consistent with other arguments that do not require the conclusion that the crossing was private such as that the sign was placed on private property which fell outside of any state right of way which might abut a public crossing. In any event, the state court did not accept (or even rule on) any argument that the crossing was private. For all of these reasons, the court declines to find that B&W is judicially estopped from arguing that the crossing is a public crossing.

**Declaratory Judgment Claim.** SCDOT's position that the Disputed Crossing is private does not so clearly foreclose B&W's claims against SCDOT as to support a finding of fraudulent joinder. As noted above, Plaintiff seeks a declaratory judgment that the Disputed Crossing is a public way. At oral argument, Plaintiff explained that it seeks to require SCDOT to treat the Disputed Crossing as a public way given the long-standing public use of the crossing. Plaintiff also

7

indicated a desire for discovery as to the procedures and standards used by SCDOT in determining when to assume responsibility for (or jurisdiction over) a crossing pursuant to § 58-15-1625.

The language of the governing statute is not so clear as to foreclose any glimmer of hope of success on this argument. For example, the statute's reference to SCDOT's ability to "assume[] jurisdiction" over a "matter" relating to closure of a crossing may support an argument that SCDOT may intervene as to the Railroad Defendants' intended closure.[6] Assuming SCDOT does assume jurisdiction, it would, presumably, need to weigh the countervailing factors referenced in the statute before closure. It is also unclear at this juncture whether a court may require SCDOT to intervene when it does not voluntarily elect to do so. The answer to this question may require inquiry into SCDOT's procedures, prior practices, and related prior administrative or judicial determinations, none of which are presently before this court or likely to provide so clear an answer as to support a finding of fraudulent joinder.[7]

---

[6] As explained in S.C. Code Ann. § 58-15-1625:

> Notwithstanding any other provision of law, the Department of Transportation may order legally closed and abolished as a public way, within the limits of a railroad right-of-way, *a grade crossing then in existence at the time the department assumes jurisdiction of the matter*, upon a finding that the enhancement of public safety resulting from such closing outweighs any inconvenience caused by increased circuitry of highway routes. . . . The authority of the department legally to close and abolish grade crossings is in addition to authority granted by law to other state agencies or to local units of government to close and abolish grade crossings. Upon the issuance of the order by the department, the railroad or railroads involved shall physically remove the crossing from the tracks, and the governmental unit maintaining the highway shall remove or barricade the approaches to the crossing.

(emphasis added).

[7] The Railroad Defendants did not analyze whether the Disputed Crossing was a "public way" under § 58-15-1625 in their briefs. Rather, these Defendants relied solely on their judicial estoppel argument.

During oral argument, the court asked counsel for SCDOT whether the statute could be read to allow SCDOT to assume jurisdiction over a crossing that, until that point, was treated only as a

8

For the reasons set forth above, the court concludes that Defendants have not proved that (1) judicial estoppel applies to preclude Plaintiff's position in this case that the Disputed Crossing is a public way or (2) that Plaintiff has no glimmer of hope of succeeding in its pursuit of declaratory relief against SCDOT. Accordingly, Defendants have failed to prove that SCDOT was fraudulently joined.

The court expresses no opinion as to the merits of the claims against any Defendant, but merely finds that the Railroad Defendants have not carried the heavy burden required to establish fraudulent joinder of SCDOT. The court, therefore, remands the case to state court.

**IT IS SO ORDERED.**

      s/ Cameron McGowan Currie
      CAMERON MCGOWAN CURRIE
      UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 18, 2009

---

private crossing. Relying solely on the language of § 58-15-1625, counsel argued that § 58-15-1625 could only be read to require SCDOT to take action to close crossings that were considered public ways.

     The court does not find the language in the statute so clear as to foreclose the possibility that a court will interpret the statute to allow (or require) SCDOT to assume jurisdiction over a private crossing, at least in light of the highly deferential fraudulent joinder standard.